IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-53

Filed 3 December 2025

Forsyth County, Nos. 22CR001617-330, 21CR060772-330, 21CR060773-330, 21CR060774-330

STATE OF NORTH CAROLINA

v.

FRANKLIN JAMES MOSLEY, Defendant.

Appeal by defendant from judgment entered 5 June 2024 by Judge Joseph N. Crosswhite in Forsyth County Superior Court. Heard in the Court of Appeals 25 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Samuel R. Gray, for the State.*

> *Cooley Law Office, by Craig M. Cooley, for defendant-appellant.*

DILLON, Chief Judge.

This case presents the question of whether the movement by Defendant Franklin J. Mosely of his robbery victim between rooms constituted a separate and complete act sufficient to sentence Defendant separately for kidnapping or whether the moving of the victim was merely inherent and inevitable to his robbery with a deadly weapon for which he was separately convicted. For the reasoning below, we conclude Defendant received a fair trial, free of reversible error.

## I.  Background

Defendant went to the victim's home, shot the victim in the leg and the arm, and robbed the victim of his money and personal property.  During the robbery Defendant forced the victim to move from the living room to a rear bedroom despite the victim's wounded leg.  Defendant was arrested and indicted on multiple charges, including robbery with a dangerous weapon ("RWDW") and first-degree kidnapping.  The jury convicted Defendant.  Defendant timely appealed.

## II.  Analysis

Defendant's sole argument on appeal is that the trial court erred when it denied Defendant's *motion to dismiss* the first-degree kidnapping charge.  The basis of Defendant's argument is that there was no evidence to show any kidnapping was separate from the robbery.  For the reasoning below, we conclude Defendant's argument is misplaced.  Specifically, there was clearly sufficient evidence to show Defendant kidnapped the victim; and, therefore, the trial court did not err in submitting the charge to the jury.  Indeed, if the kidnapping was inherent with the robbery in this case *and* the jury convicted Defendant of both, the appropriate argument is a Double Jeopardy argument, that the trial court erred by denying a *motion to arrest judgment* on the kidnapping.  However, on appeal, Defendant fails to show he asked the trial court to arrest judgment on the kidnapping charge after the jury came back.  Notwithstanding Defendant's failure to preserve a Double Jeopardy argument, we conclude no Double Jeopardy violation occurred, as the

evidence, in the light most favorable to the State, shows that the kidnapping was not inherent in the robbery.

## A.     Motion to Dismiss

We review a denial of a motion to dismiss *de novo*. *State v. Cox*, 367 N.C. 147, 151 (2013). "Upon [a] defendant's motion for dismissal, the question . . . is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Davenport*, 386 N.C. 454, 460 (2024) (citations omitted). "Substantial evidence is the 'amount . . . necessary to persuade a rational juror to accept a conclusion.'" *State v. Beck*, 385 N.C. 435, 438 (2023) (citations omitted). We view the evidence, and draw "every reasonable inference" from that evidence, in favor of the State. *Id.*

The crime of first-degree kidnapping is committed when:

> (a) [A] person . . . unlawfully confine[s], restrain[s], or remove[s] from one place to another, any person . . .without the consent of such person . . . if such confinement, restraint or removal is for the purpose of:
>
> . . .
>
> (2) Facilitating the commission of any felony . . . or
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]

N.C.G.S. § 14-39 (2023).

In this matter, there was clearly sufficient evidence to show Defendant

committed the crime of first-degree kidnapping. Indeed, Defendant does not really argue the evidence was insufficient as such. He merely argues the kidnapping was inherent in the robbery. Accordingly, we conclude the trial court did not err by denying Defendant's motion to dismiss the kidnapping charge during the trial.

## B.     Double Jeopardy

Defendant's argument regarding the trial court's failure to dismiss the kidnapping charge is more appropriately a Double Jeopardy argument, where the focus of Defendant's contention is that Defendant should not be punished for both the kidnapping and robbery the jury found he committed. However, Defendant did not properly preserve his Double Jeopardy argument, as he did not ask the trial court to arrest judgment after the jury came back. *See State v. Mulder*, 233 N.C. App. 82, 86-87 (2014).

Notwithstanding, we note that even if Defendant had requested judgment be arrested on the kidnapping charge, the trial court would not have erred by denying such request.

Our Supreme Court has repeatedly explained that because certain felonies necessarily require some confinement, restraint, or movement of the victim, the General Assembly did not intend for our kidnapping statute to apply to restraint that "is an inherent, inevitable feature of such other felony[.]" *State v. Fulcher*, 294 N.C. 503, 523 (1981); *see also State v. China*, 370 N.C. 627, 633–34 (2018). Constitutional issues are avoided, though, when the restraint "is a separate, complete act,

independent of and apart from the other felony." *China*, 370 N.C. at 634 (quoting *Fulcher*, 294 N.C. at 523–24). Restraint is separate, complete, and independent from the other felony if (1) it "exposed [the victim] to greater danger than that inherent in the armed robbery itself" or (2) the victim is "subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *State v. Pigott*, 331 N.C. 199, 210 (1992) (alterations in original) (citation omitted).

For instance, in *Pigott*, the defendant went to his employer's apartment late at night seeking a loan. *Id.* at 202. After the employer refused, the defendant returned, armed with a gun. *Id.* The defendant then bound the employer's hands and ransacked the apartment. *Id.* After searching for money, the defendant further bound the employer's hands and feet and shot the employer in the head. *Id.*

Our Supreme Court held that there was sufficient evidence of restraint separate from the robbery, reasoning the restraint needed for the armed robbery was the defendant's "threating [of] the victim with the gun[,]" and the subsequent binding of the employer's hands and feet "exposed [the employer to a] greater danger" as it "increase[ed] the victim's helplessness and vulnerability beyond the threat that" permitted the defendant to commit the initial robbery. *Id.* at 210. *See also China*, 370 N.C. at 635–36 (holding that, after the victim was hit and sexually assaulted, there was substantial evidence of restraint for a kidnapping charge when the defendant pulled the victim off of the bed prior to kicking and stomping the victim); *but see State v. Irwin*, 304 N.C. 93, 103 (1981) (holding that restraint—defendant's

movement of the victim—was inherent to an attempted armed robbery because it was *necessary* for the victim to be moved to the back of the store to open a safe).

However, it is important to note, that some of our precedent delineates between restraint and movement *prior to or after* a robbery has begun or is completed, *see, e.g., State v. Stokes*, 367 N.C. 474, 482 (2014) (holding there was separate restraint when the victim was ordered to move *after* the armed robbery was complete); *State v. Stokley*, 276 N.C. App. 249, 256 (2021) (explaining the restraint and removal occurred *before* a shooting and robbery), and restraint and movement during an *ongoing* robbery, *see, e.g., State v. Cartwright*, 177 N.C. App. 531, 537 (2006) (holding that the movement of the victim after the robbery began was not sufficient for the kidnapping charge because the victim was not placed in greater danger); *State v. Payton*, 198 N.C. App. 320, 328 (2009) (holding that the victims were not placed in greater danger when they were moved during an ongoing robbery). But the "key question" remains to be whether the victim is exposed to greater danger than what is inherent in the underlying felony or experiences the danger or abuse our kidnapping statute seeks to prevent. *See Pigott*, 331 N.C. at 210 (citation omitted); *China*, 370 N.C. at 634.

Here, Defendant was also convicted of RWDW. The elements of RWDW are: "(1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use, or threatened use of firearms or other dangerous weapon, implements, or means; and (3) a danger or threat to the life of the victim." *State v. Murrell*, 370 N.C. 187, 194 (2017); N.C.G.S § 14-87 (2023).

To determine whether the entry of judgment on both kidnapping and robbery in this case requires us to view the evidence in a light most favorable to the State. The evidence at trial tended to show as follows: After Defendant entered the victim's home and the two briefly conversed in the living room, Defendant pulled out two handguns and shot the victim's right leg. From there, Defendant took the victim's wallet, the $92 and cards therein, and his cell phone. Defendant again pointed a gun at the victim, ordered him to get up and go to the victim's bedroom, even though the victim had just been shot. Due to the injury, the victim's leg gave out when the victim first attempted to stand and follow Defendant's command. Then, the victim dragged himself along the wall approximately ten to eleven feet until he reached his bedroom. Once there, Defendant ordered the victim to sit down on the bed, and Defendant began searching the victim's closet. After a futile search, the victim offered two gold chains. Defendant took the chains, shot the victim's left arm, and departed.

Here, as was the case in *Pigott*, the restraint that was inherent to Defendant's RWDW was completed by Defendant "threatening [the victim] with the gun." However, by forcing the victim, after shooting him in the leg, to move into another room, Defendant "exposed [the victim to a] greater danger than that inherent in the [RWDW] itself." This is so because the movement increased the victim's "helplessness and vulnerability beyond" what was needed to commit the RWDW: the victim was required to remain under Defendant's supervision, precluding possible escape, earlier medical treatment, or intervention from a passerby, and required the victim to drag

himself along the wall from the living room to the bedroom on a badly wounded leg that gave out when the victim first attempted to place weight on it.

To that end, despite the movement occurring during an ongoing robbery, the restraint was sufficient to support the kidnapping charge because of the victim's exposure to a greater danger. Moreover, to commit a RWDW against the victim, it was not necessary for Defendant to relocate the victim from the living room to the bedroom. *Cf. Irwin*, 304 N.C. at 103 ("To accomplish [the] defendant's objective of obtaining drugs it was necessary that [the victim] go to the back of the store to the prescription counter and open the safe.").

Thus, the restraint of the victim was a separate, complete, and independent of the restraint inherent in Defendant's RWDW, and the trial court would not have erred by denying a motion by Defendant to arrest judgment on the kidnapping conviction.

### III. Conclusion

Defendant received a fair trial, free of reversible error.

NO ERROR.

Judge MURRY concurs.

Judge ARROWOOD concurs in result only.